MICHAEL FAILLACE & ASSOCIATES, P.C.
Michael A. Faillace
60 East 42nd Street, Suite 2020
New York, New York 10165
Telephone:    (212) 317-1200
Facsimile:    (212) 317-1620
*Attorneys for Plaintiffs*

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

CV 12 - 2869

-------------------------------------------------------X

CARINA CURBELO, ELIZABETH
DUARTE, JESSICA RINCON and SILVIA
DELRE, *individually and on behalf of others
similarly situated,*

                        *Plaintiffs,*

        -against-

Sabor Latino I Corp. (d/b/a SABOR LATINO),
ROSA INGA, JESUS INGA and JUAN INGA,

                        *Defendants.*

-------------------------------------------------------X

**COMPLAINT**

**RULE 23 CLASS ACTION
and COLLECTIVE ACTION
UNDER 29 U.S.C. § 216(b)**

**ECF Case**

KUNTZ, J.

GO, M.J.

        Carina Curbelo, Elizabeth Duarte, Jessica Rincon and Silvia DelRe ("Plaintiffs"),

individually and on behalf of others similarly situated, by and through their attorneys, Michael

Faillace & Associates, P.C., upon their knowledge and belief, and as against Sabor Latino I

Corp. (d/b/a Sabor Latino) (the "Defendant Corporation" or "Sabor Latino"), Rosa Inga, Jesus

Inga and Juan Inga (together with the Defendant Corporation, "Defendants"), allege as follows:

## NATURE OF THE ACTION

        1.      Plaintiffs are former employees of Defendants Sabor Latino, Rosa Inga, Jesus

Inga and Juan Inga.

        2.      Defendants own, operate, and/or control a bar/restaurant located at 95-35 40th

Road, Elmhurst, New York 11373 under the name "Sabor Latino."

3.      Defendant Sabor Latino I Corp. is owned and operated by Individual Defendants Rosa Inga, Jesus Inga and Juan Inga, as Sabor Latino's Chairman and/or Chief Executive Officers.

4.      Upon information and belief, Individual Defendants Rosa Inga, Jesus Inga and Juan Inga serve as owners, principals or agents of Defendant Sabor Latino I Corp. (the "Defendant Corporation"), and through the corporate entity operate or operated Sabor Latino as a joint or unified enterprise.

5.      Plaintiffs are former employees of the Defendants. They were employed as bartenders and ostensibly employed as waitresses , but they were required to spend several hours of their work time each day performing non-tipped duties unrelated to waitressing, including sweeping, mopping, cleaning the bathrooms, doors, sidewalk, sofas, candle glass containers, refrigerators, and windows, cutting lemons, fixing up tables for parties (by placing a piece of wood on top of 2 or more tables), fixing tables with shorter legs, refilling ketchup, sugar and hot sauce containers, taking out and bringing back tables and chairs from the sidewalk, refilling the refrigerators with ice, carrying and organizing tables in the locker room and, placing candles on the tables, scraping the gum from the floor and removing stains from the floor, and organizing the room for a party the next day.

6.      At all times relevant to this complaint, Plaintiffs worked for Defendants in excess of 40 hours per week, without appropriate compensation for the hours over 40 per week that they worked.

7.      Defendants failed to maintain accurate records of hours worked, failed to pay Plaintiffs appropriately for any hours worked over 40, whether at the straight rate of pay, or for any additional overtime premium.

- 2 -

wage and overtime compensation required by federal and state

8.      Further, Defendants failed to pay Plaintiffs the required "spread of hours" pay for any day in which they had to work over 10 hours per day.

9.      Defendants employed and accounted for several Plaintiffs as waitresses in their payroll, but in actuality their duties required greater or equal time spent in non-waitressing, non-tipped functions such as those described above.

10.     Regardless, at all times Defendants paid these Plaintiffs at the lowered tip-credit rate.

11.     However, under state law Defendants were not entitled to take a tip credit because Plaintiffs' non-tipped duties exceeded 20% of each workday, or 2 hours per day (whichever was less in each day) (12 N.Y.C.R.R. §146).

12.     Upon information and belief, Defendants employed the policy and practice of disguising Plaintiffs' actual duties in payroll records to avoid paying Plaintiffs at the minimum wage rate and to enable them to pay Plaintiffs at the lower tip-credited rate by designating them waitresses instead of non-tipped employees.

13.     For at least six years prior to the filing of this action and continuing to the present, Defendants have maintained a policy and practice of unlawfully appropriating Plaintiffs' and other employees' tips and made unlawful deductions from Plaintiffs' and other employees' wages.

14.     Defendants' conduct extended beyond the Plaintiffs to all other similarly situated employees. At all times relevant to this complaint, Defendants maintained a policy and practice of requiring Plaintiffs and other employees to work in excess of forty (40) hours per week without providing the minimum wage and overtime compensation required by federal and state law and regulations.

15.     Plaintiffs now bring this action on behalf of themselves, and other similarly situated individuals, for unpaid minimum wages and overtime wage orders pursuant to the Fair Labor Standards Act of 1938, 29 U.S.C. § 201 *et seq.* ("FLSA"), and for violations of the N.Y. Labor Law §§ 190 *et seq.* and 650 *et seq.* (the "NYLL"), and the "spread of hours" and overtime wage orders of the New York Commissioner of Labor codified at N.Y. COMP. CODES R. & REGS. Tit. 12, § 137-1.7 (2006) (herein the "Spread of Hours Wage Order"), including applicable liquidated damages, interest, attorneys' fees, and costs.

16.     Plaintiffs seek certification of this action as a collective action on behalf of themselves individually and all other similarly situated employees and former employees of the Defendants pursuant to 29 U.S.C. § 216(b).

## JURISDICTION AND VENUE

17.     This Court has subject matter jurisdiction under 28 U.S.C. § 1331 (federal question); 29 U.S.C. §§ 201 *et seq.* (FLSA); and 28 U.S.C. § 1367(a) (supplemental jurisdiction over state law claims).

18.     Venue is proper in this District under 28 U.S.C. §1391(b) and (c) because all or a substantial part of the events or omissions giving rise to the claims occurred in this district. The Defendants maintain their corporate headquarters and offices within this district, and Defendants operate Sabor Latino, a bar/restaurant located in this district. Further, Plaintiffs were employed by Defendants in this district.

- 4 -

## THE PARTIES

### *Plaintiffs*

19.     Plaintiff Carina Curbelo ("Plaintiff Curbelo" or "Curbelo") is an adult individual residing in Queens, New York. Plaintiff Curbelo was employed by the Defendants from approximately 2001 until February 2009 and from February 2010 until May 5, 2012.

20.     Plaintiff Elizabeth Duarte ("Plaintiff Duarte" or "Duarte") is an adult individual residing in Queens County, New York. Plaintiff Duarte was employed by the Defendants from approximately September 2009 until May 15, 2012.

21.     Plaintiff Jessica Rincon ("Plaintiff Rincon" or "Rincon") is an adult individual residing in Queens County, New York. Plaintiff Rincon was employed by the Defendants from approximately November 2011 until April 29, 2012.

22.     Plaintiff Silvia DelRe ("Plaintiff DelRe" or "DelRe") is an adult individual residing in Queens County, New York. Plaintiff DelRe was employed by the Defendants from approximately 2002 until December 31, 2008 and from June 2011 until March 2012.

### *Defendants*

23.     Defendants own, operate, or control a bar/restaurant located at 95-35 40th Road, Elmhurst, New York, under the name of Sabor Latino a, at all times relevant to this complaint.

24.     Upon information and belief, Defendant Sabor Latino I Corp. is a corporation organized and existing under the laws of the State of New York. Upon information and belief it maintains its principal place of business at 95-35 40th Road, New York, New York 11373.

25.     Defendant Rosa Inga is an individual engaging (or who was engaged) in business with this judicial district during the relevant time period. Defendant Rosa Inga is sued

- 5 -

individually in her capacity as an owner, officer and/or agent of the Defendant Corporation. Defendant Rosa Inga possesses or possessed operational control over Defendant Corporation, an ownership interest in Defendant Corporation, or controlled significant functions of Defendant Corporation. She determined the wages and compensation of the employees of Defendants, including Plaintiffs, and established the schedules of the employees, maintained employee records, and had the authority to hire and fire employees.

26.     Defendant Jesus Inga is an individual engaging (or who was engaged) in business with this judicial district during the relevant time period. Defendant Jesus Inga is sued individually in his capacity as an owner, officer and/or agent of the Defendant Corporation. Defendant Jesus Inga possesses or possessed operational control over Defendant Corporation, an ownership interest in Defendant Corporation, or controlled significant functions of Defendant Corporation. He determined the wages and compensation of the employees of Defendants, including Plaintiffs, and established the schedules of the employees, maintained employee records, and had the authority to hire and fire employees.

27.     Defendant Juan Inga is an individual engaging (or who was engaged) in business with this judicial district during the relevant time period. Defendant Juan Inga is sued individually in his capacity as an owner, officer and/or agent of the Defendant Corporation. Defendant Juan Inga possesses or possessed operational control over Defendant Corporation, an ownership interest in Defendant Corporation, or controlled significant functions of Defendant Corporation. He determined the wages and compensation of the employees of Defendants, including Plaintiffs, and established the schedules of the employees, maintained employee records, and had the authority to hire and fire employees.

## FACTUAL ALLEGATIONS

### *Defendants Constitute Joint Employers*

28.    Defendants operate a bar/restaurant in Elmhurst, New York.

29.    Defendants maintain as their principal place of business a centralized office which is located at 95-35 40th Road, Elmhurst, New York 11373.

30.    Individual Defendant Rosa Inga, possesses operational control over Defendant Corporation, possesses an ownership interest in Defendant Corporation, and controls significant functions of Defendant Corporation.

31.    Upon information and belief, Defendant Rosa Inga serves or served as Chairman and/ or Chief Executive Officer of Defendant Corporation.

32.    Individual Defendant, Jesus Inga, possesses operational control over Defendant Corporation, possesses an ownership interest in Defendant Corporation, and controls significant functions of Defendant Corporation.

33.    Upon information and belief, Defendant Jesus Inga serves or served as Chairman and/ or Chief Executive Officer of Defendant Corporation.

34.    Individual Defendant, Juan Inga, possesses operational control over Defendant Corporation, possesses an ownership interest in Defendant Corporation, and controls significant functions of Defendant Corporation.

35.    Upon information and belief, Defendant Juan Inga serves or served as Chairman and/ or Chief Executive Officer of Defendant Corporation.

36.    Defendants are associated and joint employers, act in the interest of each other with respect to employees, pay employees by the same method, and share control over the employees.

37.    Defendants possess or possessed substantial control over the Plaintiffs' (and other similarly situated employees') working conditions, and over the policies and practices with respect to the employment and compensation of the Plaintiffs, and all similarly situated individuals, referred to herein.

38.    Defendants jointly employed the Plaintiffs, and all similarly situated individuals, and are Plaintiffs' (and all similarly situated individuals') employers within the meaning of 29 U.S.C. 201 *et seq.* and the NYLL.

39.    In the alternative, the Defendants constitute a single employer of the Plaintiffs and/or similarly situated individuals.

40.    Upon information and belief, Defendants Rosa Inga, Jesus Inga and Juan Inga (1) operate Sabor Latino I Corp. as an alter ego of themselves, and/or (2) fail to operate Sabor Latino I Corp. as an entity legally separate and apart from themselves, by among other things,

      a.    failing to adhere to the corporate formalities necessary to operate Sabor Latino I Corp. as a corporation;

      b.    defectively forming or maintaining the corporate entity of Sabor Latino I Corp., by among other things failing to hold annual meetings or maintaining appropriate corporate records;

      c.    transferring assets and debts freely as between all Defendants;

      d.    operating Sabor Latino I Corp. for their own benefit as the sole or majority shareholders;

      e.    operating Sabor Latino I Corp. for their own benefit and maintaining control over it as a closed corporation, intermingling assets and debts of their own with Sabor Latino I Corp.;

- 8 -

     f.   diminishing and/or transferring assets to protect their own interests; and

     g.   other actions evincing a failure to adhere to the corporate form.

    41.   At all relevant times, Defendants were the Plaintiffs' employers within the meaning of the FLSA and New York Labor Law. Defendants had the power to hire and fire Plaintiffs, control the terms and conditions of employment, and determine the rate and method of any compensation in exchange for Plaintiffs' services.

    42.   In each year from 2006 to the present, the Defendants, both separately and jointly, had gross annual volume of sales of not less than $500,000 (exclusive of excise taxes at the retail level that are separately stated).

    43.   In addition, upon information and belief, the Defendants and/or their enterprise were directly engaged in interstate commerce. As example, numerous items that were used in the bar/restaurant on a daily basis were produced outside of the state of New York.

*Individual Plaintiffs*

    44.   The Plaintiffs are all current and former employees of the Defendants, who were primarily employed to work as waitresses and/or bartenders at a bar/restaurant, but whose jobs really required them to perform a variety of non-tip duties including sweeping, mopping, cleaning the bathrooms, doors, sidewalk, sofas, candle glass containers, refrigerators and windows, cutting lemons, fixing up tables for parties by placing a piece of wood on top of 2 or more tables), fixing tables with shorter legs, refilling ketchup, sugar and hot sauce containers, taking out and bringing back tables and chairs from the sidewalk, refilling the refrigerators with ice, carrying and organizing tables in the locker room and, placing candles on the tables, scraping the gum from the floor and removing stains from the floor, and organizing the room for a party the next day.

45.     They seek to represent a class of similarly situated individuals under 29 U.S.C. 216(b).

*Plaintiff Carina Curbelo*

46.     Plaintiff Curbelo was employed by the Defendants from approximately 2001 until February 2009 and from February 2010 until May 5, 2012.

47.     Defendants employed Plaintiff Curbelo as a bartender.

48.     Plaintiff Curbelo's work duties required neither discretion nor independent judgment.

49.     Plaintiff Curbelo regularly handled goods in interstate commerce, such as food, alcoholic drinks and other products produced outside of the State of New York.

50.     From approximately May 2006 until February 2009, Plaintiff Curbelo worked from approximately 7:00 p.m. to 5:00 a.m. Thursdays through Sundays (typically 44 hours per week); in addition, she was required to attend a three-hour unpaid meeting with management once every two months.

51.     From approximately February 2010 until May 2012, Plaintiff Curbelo worked a schedule from 9:00 p.m. to 6:30 am on Fridays and Saturdays, from 9:00 p.m. to 4:30 a.m. on Thursdays, and from 4:00 p.m. to 10:00 p.m. on Sundays for a period of two months (typically 26.5 to 32.5 hours per week).

52.     In addition, from February 2010 to April 2012, she was required to attend the unpaid three-hour work-related meeting with management every two months; from April 2012 to May 2012 she had to attend these unpaid three-hour meetings with management every week.

53.     Prior to May 2011, Plaintiff Curbelo was paid her wages in cash; after May 2011 she was paid by check.

54.     From approximately May 2006 until May 2011, Plaintiff Curbelo was paid $40.00 per day.

55.     From May 2011 to May 2012, Plaintiff Curbelo was paid $5 per hour.

56.     Prior to May 2011, Plaintiff Curbelo's pay did not vary even when she was required to stay later or work a longer day than her usual schedule.

57.     Plaintiff Curbelo received cash and credit card tips from the bar/restaurant's customers.

58.     However, on a monthly basis, Defendants retained the entire tip that alcohol promoters left for Plaintiff Curbelo and her fellow waitresses and bartenders; this tip always was for a considerable sum of money

59.     Also, when money was missing from the cash register at the end of her shift, the Defendant required Plaintiff Curbelo to cover the difference; this occurred at least once a week, especially because the manager refused to count the change portion of the cash register.

60.     Also, when a customer walked away without paying the check, the Defendant required Plaintiff Curbelo to pay the bill; this occurred at least 15 times, and the unpaid checks ranged from $15 to $250.

61.     Plaintiff Curbelo was never notified by the Defendants that her tips would be included as an offset for wages.

62.     Defendants did not account for these tips in any daily or weekly accounting of Plaintiff Curbelo's wages.

63.     Prior to May 2011, Defendants did not provide Plaintiff Curbelo with any document or other statement accounting for her actual hours worked, or setting forth the rate of pay for all of her hours worked.

- 11 -

64.    Instead, Defendants required her to sign a document with unknown contents in order to receive her weekly pay.

65.    Prior to May 2011, no notification, either in the form of posted notices, or other means, was given to Plaintiff Curbelo regarding overtime and wages as required under the FLSA and NYLL.

66.    Prior to May 2011, Plaintiff Curbelo was not required to keep track of her time, nor to Curbelo's knowledge, did the Defendants utilize any time tracking device, such as sign in sheets or punch cards, that accurately reflected her actual hours worked.

67.    Defendants required Plaintiff Curbelo to purchase "tools of the trade" with her own funds such as 40 white New York co. Shirts for $40.00 each, 40 black pants for $35 each, 20 black shoes for $80 each and 5 Halloween costumes for $120.00 each. Thus the total cost of the "tools of the trade" Plaintiff Curbelo was required to purchase as a waitress/bartender was approximately $5000.00.

*Plaintiff Elizabeth Duarte*

68.    Plaintiff Duarte was employed by the Defendants from approximately September 2009 until May 13, 2012.

69.    Defendants employed Plaintiff Duarte as a bartender and ostensibly as a waitress.

70.    However, Plaintiff Duarte's duties while working as a waitress included sweeping, mopping, cleaning the bathrooms, doors, sidewalk, sofas, candle glass containers, refrigerators and windows, cutting lemons, fixing up tables for parties by placing a piece of wood on top of 2 or more tables), fixing tables with shorter legs, refilling ketchup, sugar and hot sauce containers, taking out and bringing back tables and chairs from the sidewalk, refilling the refrigerators with ice, carrying and organizing tables in the locker room and, placing candles on

- 12 -

the tables, scraping the gum from the floor and removing stains from the floor, and organizing the room for a party the next day.

71. Although Plaintiff Duarte was ostensibly employed as a waitress, she spent more than 4 hours on a daily basis performing non-waitressing work throughout her employment with Defendants.

72. Plaintiff Duarte's work duties required neither discretion nor independent judgment.

73. Plaintiff Duarte regularly handled goods in interstate commerce, such as food, alcoholic drinks and other products produced outside of the State of New York.

74. Plaintiff Duarte regularly worked in excess of 40 hours per week.

75. From approximately September 2009 until May 2011, Plaintiff Duarte worked a schedule from 10:00 a.m. to 8:00 p.m. on Mondays and Tuesdays, and from 8:00 p.m. to 6:30 a.m. on Fridays, Saturdays and Sundays; in addition, twice a month, she had to cover for another employee (typically 42.5 to 62.5 hours per week).

76. From approximately May 2011 to May 13, 2012, Plaintiff Duarte worked from 9:00 p.m. to 6:00 a.m. Mondays and Wednesdays, from 4:00 p.m. to 11:00 p.m. on Saturdays and from 10:00 a.m. to 6:00 p.m. on Sundays; in addition, twice a month she came in and worked 12 hour shifts to cover for fellow workers (typically 33 to 57 hours per week).

77. In addition, from September 2009 to March 2012, she was required to attend the unpaid three-hour work-related meeting with management every two months; from April 2012 to May 2012 she had to attend these unpaid three-hour meetings with management every week.

78. Throughout her employment with the Defendants, Plaintiff Duarte was paid her wages in cash.

- 13 -

79.   From approximately September 2009 until May 2011, Plaintiff Duarte was paid $20 for every day she worked as a waitress and $40 for every day she worked as a bartender; she regularly worked 2 days of the week as a bartender and 2 to 3 days per week as a waitress). From approximately May 2011 to May 2012, Plaintiff Duarte was paid $5.00 per hour.

Prior to May 2011, Plaintiff Duarte's pay did not vary even when she was required to stay later or work a longer day than her usual schedule.

80.   Plaintiff Duarte received cash and credit card tips from the bar/restaurant's customers.

81.   However, on a monthly basis, Defendants retained the entire tip that alcohol promoters left for Plaintiff Duarte and her fellow waitresses and bartenders; this tip always was a considerable sum of money.

82.   Also, when money was missing from the cash register at the end of her shift, the Defendant required Plaintiff Duarte to cover the difference; this occurred at least once a week, especially because the manager refused to count the change portion of the cash register.

83.   Also, when a customer walked away without paying the check, the Defendant required Plaintiff Duarte to pay the bill; this occurred at least 15 times, and the unpaid checks ranged from $15 to $250.

84.   Plaintiff Duarte was never notified by the Defendants that her tips would be included as an offset for wages.

85.   Defendants did not account for these tips in any daily or weekly accounting of Plaintiff Duarte's wages.

- 14 -

86. Prior to May 2011, Defendants did not provide Plaintiff Duarte with any document or other statement accounting for her actual hours worked, or setting forth the rate of pay for all of her hours worked.

87. Instead, Defendants required her to sign a document with unknown contents in order to receive her weekly pay.

88. Prior to May 2011, No notification, either in the form of posted notices, or other means, was given to Plaintiff Duarte regarding overtime and wages as required under the FLSA and NYLL.

89. Prior to May 2011, Plaintiff Duarte was not required to keep track of her time, nor to Duarte's knowledge, did the Defendants utilize any time tracking device, such as sign in sheets or punch cards, that accurately reflected her actual hours worked.

90. Defendants required Plaintiff Duarte to purchase "tools of the trade" with her own funds such as 2 vests for $40.00 each, 8 Shirts for $35.00 each, 10 black pants for $35 each, 5 aprons for $15 each, 6 ties for $20 each, 10 New York company white shirts for $35 each, 10 black shoes for $80 each 30 boxes of pens for $5 each, 20 notebooks for taking orders for $4.00 each, 3 wine openers for $8 each and 3 Halloween costumes for $180.00 each. Thus the total cost of the "tools of the trade" Plaintiff Duarte was required to purchase as a waitress/bartender was approximately $2849.00.

*Plaintiff Jessica Rincon*

91. Plaintiff Rincon was employed by the Defendants from approximately November 2011 until April 29, 2012.

92. Defendants employed Plaintiff Rincon as a bartender and ostensibly as a waitress.

- 15 -

93.    However, Plaintiff Rincon's duties while working as a waitress included sweeping, mopping, cleaning the bathrooms, doors, sidewalk, sofas, candle glass containers, refrigerators and windows, cutting lemons, fixing up tables for parties by placing a piece of wood on top of 2 or more tables), fixing tables with shorter legs, refilling ketchup, sugar and hot sauce containers, taking out and bringing back tables and chairs from the sidewalk, refilling the refrigerators with ice, carrying and organizing tables in the locker room and, placing candles on the tables, scraping the gum from the floor and removing stains from the floor, and organizing the room for a party the next day.

94.    Although Plaintiff Rincon was ostensibly employed as a waitress, she spent more than 4 hours on a daily basis performing non-waitressing work throughout her employment with Defendants.

95.    Plaintiff Rincon's work duties required neither discretion nor independent judgment.

96.    Plaintiff Rincon regularly handled goods in interstate commerce, such as food, alcoholic drinks and, other products produced outside of the State of New York.

97.    Plaintiff Rincon regularly worked in excess of 40 hours per week.

98.    From approximately November 2011 until February 2012, Plaintiff Rincon worked from 10:45 a.m. to 11:15 p.m. on Sundays, Tuesdays, Wednesdays, Thursdays and Saturdays (typically 62.5 hours per week).

99.    From approximately February 2012 until April 29, 2012, Plaintiff Rincon worked a schedule from 10:45 a.m. to 11:15 p.m., on Tuesdays and Fridays, from 4:00 p.m. to 12:00 a.m. on Saturdays and from 9:45 a.m. to 11:15 p.m. on Sundays ; in addition, on ten occasions she

had to work an additional 12.5 hour shift to cover for a fellow worker (typically 46.5 to 59 hours per week).

100.  In addition, from November 2011 to March 2012, she was required to attend the unpaid three-hour work-related meeting with management every two months; from April 2012 to April 29, 2012 she had to attend these unpaid three-hour meetings with management every week.

101.  Throughout her employment with the Defendants, Plaintiff Rincon was paid her wages in cash.

102.  From approximately November 2011 until April 29, 2012, Plaintiff Rincon was paid $5.00 per hour.

103.  Plaintiff Rincon received cash and credit card tips from the bar/restaurant's customers.

104.  However, on a monthly basis, Defendants retained the entire tip that alcohol promoters left for Plaintiff Rincon and her fellow waitresses and bartenders; this tip always was for a considerable sum of money

105.  Furthermore, the defendants pocketed any amount of tips that customers added to the required 15 percent house tip.

106.  Also, when money was missing from the cash register at the end of her shift, the Defendant required Plaintiff Rincon to cover the difference; this occurred at least once a week, especially because the manager refused to count the change portion of the cash register.

107.  Also, when a customer walked away without paying the check, the Defendant would require Plaintiff Rincon to pay the bill; this occurred at least 15 times, and the unpaid checks ranged from $15 to $250.

- 17 -

108.  Plaintiff Rincon was never notified by the Defendants that her tips would be included as an offset for wages.

109.  Defendants did not account for these tips in any daily or weekly accounting of Plaintiff Rincon's wages.

110.  Furthermore, Defendants did not provide Plaintiff Rincon with any document or other statement accounting for her actual hours worked, or setting forth the rate of pay for all of her hours worked.

111.  No notification, either in the form of posted notices, or other means, was given to Plaintiff Rincon regarding overtime and wages as required under the FLSA and NYLL.

112.  Defendants required Plaintiff Rincon to purchase "tools of the trade" with her own funds such as 2 vests for $40.00 each, 3 Shirts for $35.00 each, 4 black pants for $35 each, 3 aprons for $15 each, 3 ties for $20 each, 2 black shoes for $80 each 10 boxes of pens for $5 each, 10 notebooks for taking orders for $4.00 each and 2 wine openers for $8 each. Thus the total cost of the "tools of the trade" Plaintiff Rincon was required to purchase as a waitress/bartender was approximately $696.00.

*Plaintiff Silvia DelRe*

113.  Plaintiff DelRe was employed by the Defendants from approximately 2002 until December 31, 2008 and from June 2011 until March 2012.

114.  Defendants employed Plaintiff DelRe as a bartender.

115.  Plaintiff DelRe's work duties required neither discretion nor independent judgment.

116.  Plaintiff DelRe regularly handled goods in interstate commerce, such as food, alcoholic drinks and other products produced outside of the State of New York.

- 18 -

117. Plaintiff DelRe regularly worked in excess of 40 hours per week.

118. From approximately May 2006 until December 2008, Plaintiff DelRe worked from 6:00 p.m. to 5:00 a.m. Tuesdays, Thursdays, Fridays, Saturdays and Sundays (typically 55 hours per week).

119. From June 2011 to March 2012, Plaintiff Del Re worked from approximately 9:00 p.m. to 6:30 a.m. on Fridays and Saturdays and from 9:00 p.m. to 6:00 a.m. on Wednesdays, Thursdays and Sundays(typically 46 hours per week).

120. In addition, from May 2006 to December 2008 and from June 2011 to March 2012, she was required to attend the unpaid three-hour work-related meeting with management every two months.

121. From May 2006 to December 2008, Plaintiff DelRe was paid her wages in cash; from June 2011 until March 2012, she was paid her wages by check.

122. From approximately May 2006 until December 2008, Plaintiff DelRe was paid $40.00 per day.

123. From June 2011 until March 2012, Plaintiff DelRe was paid $5 per hour.

Prior to May 2011, Plaintiff DelRe's pay did not vary even when she was required to stay later or work a longer day than her usual schedule.

124. Plaintiff DelRe received cash and credit card tips from the restaurant's customers.

125. However, on a monthly basis, Defendants retained the entire tip that alcohol promoters left for Plaintiff DelRe and her fellow waitresses and bartenders; this tip always was for a considerable sum of money

126. Furthermore, the defendants pocketed any amount of tips that customers added to the required 15 percent house tip.

- 19 -

127. When money was missing from the cash register at the end of her shift, the Defendants required Plaintiff DelRe to cover the difference ; this occurred at least once a week, especially because the manager refused to count the change portion of the cash register.

128. Also, when a customer walked away without paying the check, the Defendants would require Plaintiff DelRe to pay the bill; this occurred at least 15 times, and the unpaid checks ranged from $15 to $250.

129. Plaintiff DelRe was never notified by the Defendants that her tips would be included as an offset for wages.

130. Defendants did not account for these tips in any daily or weekly accounting of Plaintiff DelRe's wages.

131. Prior to May 2011, Defendants did not provide Plaintiff DelRe with any document or other statement accounting for her actual hours worked, or setting forth the rate of pay for all of her hours worked.

132. Instead, Defendants required her to sign a document with unknown contents in order to receive her weekly pay.

133. Prior to May 2011, No notification, either in the form of posted notices, or other means, was given to Plaintiff DelRe regarding overtime and wages as required under the FLSA and NYLL.

134. Plaintiff DelRe was not required to keep track of her time, nor to. DelRe's knowledge, did the Defendants utilize any time tracking device, such as sign in sheets or punch cards, that accurately reflected her actual hours worked.

135. Defendants required Plaintiff DelRe to purchase "tools of the trade" with her own funds such as special non-sliding shoes, of which she bought 4 (four) at approximately $45.00 a

- 20 -

pair. Thus the total cost of the "tools of the trade" Plaintiff DelRe was required to purchase as a waitress was approximately $180.00.

*Defendants' General Employment Practices*

136. Defendants regularly required the Plaintiffs to work in excess of 40 hours per week without paying them the proper minimum and overtime wages or spread of hours compensation.

137. At all times relevant to this complaint, Defendants maintained a policy and practice of requiring the Plaintiffs and all similarly situated employees to work in excess of 40 hours per week without paying them appropriate minimum wage and/or overtime compensation, or spread of hours compensation, as required by federal and state laws.

138. Prior to May 2011, Plaintiffs, and upon information and belief, all similarly situated employees, were paid week to week at the same flat rate of pay regardless of the actual hours worked.

139. Defendants' pay practices resulted in Plaintiffs not receiving payment for all their hours worked, resulting in Plaintiffs' effective rate of pay falling below the required minimum and overtime wage rate.

140. Defendants failed to inform the Plaintiffs that did receive tips that Defendants intended to take a deduction against Plaintiffs' earned wages for tip income, as required by the NYLL before any deduction may be taken.

141. Defendants failed to inform the Plaintiffs that their tips were supposed to be credited towards the payment of the minimum wage.

142. Defendants failed to maintain a record of the tips earned by Plaintiffs who worked as waitresses.

- 21 -

143.    As part of their regular business practice, Defendants intentionally, willfully, and repeatedly harmed Plaintiffs and other tipped employees by engaging in a pattern, practice, and/or policy of violating the FLSA and NYLL by depriving tipped employees on tips earned during the course of their employment.

144.    Defendants unlawfully misappropriated charges purported to be gratuities received by plaintiffs and other tipped employees in violations of New York Labor Law §196-d.

145.    Under the FLSA and NYLL, in order to be eligible for a "tip credit," employers of tipped employees must either allow employees to keep all the tips that they receive, or forgo the tip credit and pay them the full hourly minimum wage.

146.    At no time did Defendants inform Plaintiffs that they had reduced their hourly wage by a tip allowance.

147.    Prior to May 2011, Defendants habitually required Plaintiffs to work additional hours beyond their regular shifts, but did not provide them with any additional compensation.

148.    Defendants required Plaintiffs to perform general non-tipped restaurant tasks in addition to their primary duties as waitresses. These responsibilities included everything from sweeping, mopping, cleaning the bathrooms, doors, sidewalk, sofas, candle glass containers, refrigerators and windows, cutting lemons, fixing up tables for parties by placing a piece of wood on top of 2 or more tables), fixing tables with shorter legs, refilling ketchup, sugar and hot sauce containers, taking out and bringing back tables and chairs from the sidewalk, refilling the refrigerators with ice, carrying and organizing tables in the locker room, placing candles on the tables, scraping the gum from the floor and removing stains from the floor, and organizing the rooms for parties the next day.

- 22 -

149.    Some of the Plaintiffs were employed ostensibly as waitresses by Defendants, although their actual duties included greater or equal time spent performing non-tipped duties described above.

150.    These Plaintiffs were paid at the lowered tip-credited rate by Defendants; however, under state law Defendants were not entitled to a tip credit because Plaintiffs' non-tipped duties exceeded 20% of each workday (or 2 hours a day, whichever was less) (12 N.Y.C.R.R. § 146).

151.    New York State regulations provide that an employee cannot be classified as a tipped employee "on any day . . . in which she has been assigned to work in an occupation in which tips are not customarily received." (12 N.Y.C.R.R. §§137-3.3 and 137-3.4). Similarly, under federal regulation 29 C.F.R. §531.56(e), an employer may not take a tip credit for any employee time if that time is devoted to a non-tipped occupation.

152.    Plaintiffs' duties were not incidental to their occupation as waitresses, but instead constituted entirely unrelated general restaurant work with duties including the non-tipped duties described herein.

153.    In violation of federal and state law as codified above, Defendants classified Plaintiffs as tipped employees and paid them at the tip-credited rate when they should have classified them as non-tipped employees and paid them at the minimum wage rate.

154.    When money was missing from the cash register at the end of the plaintiffs' shift, the Defendants required them to cover the difference.  This occurred at least once a week, especially because the manager refused to count the change portion of the cash register.

155.    When a customer walked away without paying the check, the Defendants required the plaintiffs to pay the bill.  This occurred on numerous occasions

- 23 -

156. Prior to May 2011, Defendants willfully disregarded and purposefully evaded recordkeeping requirements of the Fair Labor Standards Act and New York Labor Law by failing to maintain accurate and complete timesheets and payroll records.

157. Defendants failed to post required wage and hour posters in the restaurant and did not provide Plaintiffs with statutorily required wage and hour records or statements of their pay received, in part so as to hide Defendants' violations of the wage and hour laws, and to take advantage of Plaintiffs' relative lack of sophistication in wage and hour laws.

158. Prior to May 2011, All Plaintiffs were paid their wages wholly in cash; from May 2011 to the present, some plaintiffs were paid in cash and others by check depending on their immigration status.

159. Prior to May 2011, Plaintiffs and all other similarly situated employees were never required by the Defendants to keep track of their time, nor to the Plaintiffs' knowledge, did the Defendants utilize any time tracking device, such as sign in sheets or punch cards, that accurately reflected actual hours worked.

160. Upon information and belief, these practices by Defendants were done willfully to disguise the actual number of hours Plaintiffs (and similarly situated individuals) worked, and to avoid paying Plaintiffs properly for (1) their full hours worked, (2) for overtime due, and (3) for spread of hours pay.

161. Prior to May 2011, Defendants failed to post at the workplace, or otherwise provide to employees, the required postings or notices to employees regarding the applicable wage and hour requirements of the FLSA and NYLL.

- 24 -

## FLSA COLLECTIVE ACTION CLAIMS

162.    Plaintiffs bring their FLSA minimum wage, overtime, and liquidated damages claims as a collective action pursuant to FLSA Section 16(b), 29 U.S.C. § 216(b), on behalf of all similarly situated persons (the "FLSA Class"), i.e., persons who are or were employed by Defendants or any of them, on or after the date that is three years before the filing of the complaint in this case (the "FLSA Class Period").

163.    At all relevant times, Plaintiffs, and other members of the FLSA Class were similarly situated in that they had substantially similar job requirements and pay provisions, and have been subject to Defendants' common practices, policies, programs, procedures, protocols and plans of willfully failing and refusing to pay them at a one and one-half their regular rates for work in excess of 40 hours per workweek, and willfully failing to keep records required by the FLSA. The claims of Plaintiffs stated herein are similar to those of the other employees.

## FEDERAL RULE 23 CLASS ACTION ALLEGATIONS

164.    Plaintiffs sue on their own behalf and on behalf of a class of persons similarly situated under Rule 23(a), (b)(2) and (b)(3) of the Federal Rules of Civil Procedure.

165.    Plaintiffs bring their New York Labor Law minimum wage, overtime, spread-of-hours, wage deduction, and liquidated damages claims on behalf of all persons who are or were employed by Defendants in the state of New York, on or after the date that is six years before the filing of the complaint in this case, June 8, 2012, to entry of judgment in this case (the "New York Class Period"). All said persons, including Plaintiffs, are referred to herein as the "New York Class."

166.    The persons in the New York Class are so numerous that joinder of all members is impracticable.  Although the precise number of such persons is unknown, and facts on which

- 25 -

the calculation of that number are presently within the sole control of Defendants, there are approximately over sixty members of the New York Class during the New York Class Period.

167.    There are questions of law and fact common to the Class including:

a.    what proof of hours worked is sufficient where Defendants fail in their duty to maintain time records;

b.    what were the policies, practices, programs, procedures, protocols and plans of Defendants regarding payment of wages for all hours worked;

c.    what were the policies, practices, programs, procedures, protocols and plans of Defendants regarding payment of at least minimum wages for all hours worked;

d.    whether Defendants failed and/or refused to pay Plaintiffs the minimum wage and overtime at the premium rate within the meaning of the New York Labor Law;

e.    whether Defendants failed and/or refused to pay Plaintiffs "Spread of Hours" Pay;

f.    whether Defendants improperly deducted "shorts" from the Plaintiffs' wages;

g.    at what common rate, or rates subject to common methods of calculation, were and are Defendants required to pay the class members for their work; and

h.    what are the common conditions of employment and in the workplace, such as recordkeeping, clock- in procedures, breaks, and policies and practices that affect whether the class was paid at overtime rates for minimum wage and overtime work.

168.    The claims of the representative parties are typical of the claims of the class. Plaintiffs and the other class members were subjected to Defendants' policies, practices, programs, procedures, protocols and plans alleged herein concerning non-payment of overtime, non-payment of wages, and failure to keep required records. The job duties of the named Plaintiffs were and are typical of those of class members.

- 26 -

169.    The representative parties will fairly and adequately protect the interests of the New York Class and have no interests antagonistic to the class. The Named Plaintiffs are represented by attorneys who are experienced and competent in both class action litigation and employment litigation.

170.    The common questions of law and fact predominate over questions affecting only individual members.

171.    A class action is superior to other available methods for fairly and efficiently adjudicating controversy, particularly in the context of wage and hour litigation, where individual plaintiffs lack the financial resources to prosecute a lawsuit in federal court against corporate defendants vigorously. The damages suffered by individual class members are small, compared to the expense and burden of individual prosecution of this litigation. Class action treatment will obviate unduly duplicative litigation and the possibility of inconsistent judgments.

172.    Defendants have acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole.

**FIRST CAUSE OF ACTION**
**(VIOLATION OF THE MINIMUM WAGE PROVISIONS OF THE FLSA)**

173.    Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

174.    At all times relevant to this action, Defendants were Plaintiffs' employers within the meaning of the Fair Labor Standards Act, 29 U.S.C. § 203(d). Defendants had the power to hire and fire Plaintiffs, control their terms and conditions of employment, and determine the rate and method of any compensation.

- 27 -

175. At all times relevant to this action, Defendants were engaged in commerce or in an industry or activity affecting commerce.

176. Defendants constitute an enterprise within the meaning of the Fair Labor Standards Act, 29 U.S.C. § 203(r-s).

177. Defendants failed to pay Plaintiffs (and the FLSA Class members) at the applicable minimum hourly rate, in violation of 29 U.S.C. § 206(a).

178. Defendants' failure to pay Plaintiffs (and the FLSA Class members) at the applicable minimum hourly rate was willful within the meaning of 29 U.S.C. § 255(a).

179. Plaintiffs have been damaged in an amount to be determined at trial.

## SECOND CAUSE OF ACTION
## (VIOLATION OF THE OVERTIME PROVISIONS OF THE FLSA)

180. Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

181. Defendants, in violation of the FLSA, failed to pay Plaintiffs (and the FLSA class members) overtime compensation at rates of one and one-half times the regular rate of pay for each hour worked in excess of forty hours in a workweek, in violation of 29 U.S.C. § 207(a)(1).

182. Defendants' failure to pay Plaintiffs overtime compensation was willful within the meaning of 29 U.S.C. § 255(a).

183. Plaintiffs have been damaged in an amount to be determined at trial.

## THIRD CAUSE OF ACTION
## (VIOLATION OF THE NEW YORK MINIMUM WAGE ACT)

184. Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

185. At all times relevant to this action, Defendants were Plaintiffs' employers within the meaning of the N.Y. Labor Law §§ 2 and 651. Defendants had the power to hire and fire

Plaintiffs, control their terms and conditions of employment, and determine the rates and methods of any compensation.

186.     Defendants, in violation of the NYLL, paid Plaintiffs less than the minimum wage in violation of NYLL § 652(1) and the supporting regulations of the New York State Department of Labor.

187.     Defendants' failure to pay Plaintiffs minimum wage was willful within the meaning of N.Y. Labor Law § 663.

188.     Plaintiffs have been damaged in an amount to be determined at trial.

### FOURTH CAUSE OF ACTION
### (VIOLATION OF THE OVERTIME PROVISIONS OF THE
### NEW YORK LABOR LAW)

189.     Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

190.     Defendants, in violation of the NYLL § 190 *et seq.* and associated rules and regulations, failed to pay Plaintiffs overtime compensation at rates of one and one-half times the regular rate of pay for each hour worked in excess of 40 hours in a workweek.

191.     Defendants failed to pay Plaintiffs in a timely fashion, as required by Article 6 of the New York Labor Law.

192.     Defendants' failure to pay Plaintiffs overtime compensation was willful within the meaning of N.Y. Labor Law § 663.

193.     Plaintiffs have been damaged in an amount to be determined at trial.

### FIFTH CAUSE OF ACTION
### (VIOLATION OF THE SPREAD OF HOURS WAGE ORDER
### OF THE NEW YORK COMMISSIONER OF LABOR)

194.     Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

195.   Defendants failed to pay Plaintiffs one additional hour's pay at the basic minimum wage rate before allowances for each day Plaintiffs' spread of hours exceeded ten hours in violation of New York Lab. Law §§ 190 *et seq.* and 650 *et seq.* and the wage order of the New York Commissioner of Labor codified at N.Y. Comp. Codes R. & Regs. tit. 12, § 137-1.7 and 137-3.11.

196.   Defendants' failure to pay Plaintiffs an additional hour's pay for each day Plaintiffs' spread of hours exceeded ten hours was willful within the meaning of New York Lab. Law § 663.

197.   Plaintiffs have been damaged in an amount to be determined at trial.

## SIXTH CAUSE OF ACTION
## (VIOLATION OF SECTION 193 OF THE NEW YORK LABOR LAW)

198.   Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

199.   Based on the foregoing, the Defendants violated Section 193 of the New York Labor Law.

200.   Plaintiffs have been damaged in an amount to be determined at trial.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that this Court enter judgment against Defendants:

a.   Designating this action as a collective action and authorizing prompt issuance of notice pursuant to 29 U.S.C. § 216(b) to all putative class members, apprising them of the pendency of this action, and permitting them promptly to file consents to be Plaintiffs in the FLSA claims in this action;

- 30 -

b. Declaring that Defendants have violated the minimum wage provisions of, and associated rules and regulations under, the FLSA as to Plaintiffs and the FLSA class members;

c. Declaring that Defendants have violated the overtime wage provisions of, and associated rules and regulations under, the FLSA as to Plaintiffs and the FLSA class members;

d. Declaring that the Defendants have violated the recordkeeping requirements of, and associated rules and regulations under, the FLSA with respect to Plaintiffs' and the FLSA class members' compensation, hours, wages, and any deductions or credits taken against wages;

e. Declaring that Defendants' violation of the provisions of the FLSA was willful as to Plaintiffs and the FLSA class members;

f. Awarding Plaintiffs and the FLSA class members damages for the amount of unpaid minimum and overtime wages, and damages for any improper deductions or credits taken against wages under the FLSA as applicable;

g. Awarding Plaintiffs and the FLSA class members liquidated damages in an amount equal to 100% of their damages for the amount of unpaid minimum and overtime wages, and damages for any improper deductions or credits taken against wages under the FLSA as applicable pursuant to 29 U.S.C. § 216(b);

h. Declaring that Defendants have violated the minimum wage provisions of, and rules and orders promulgated under, the NYLL as to Plaintiffs;

i. Declaring that Defendants have violated the overtime wage provisions of, and rules and orders promulgated under, the NYLL as to Plaintiffs;

j.  Declaring that Defendants have violated the Spread of Hours Wage Order of the New York Commission of Labor as to Plaintiffs;

k.  Declaring that the Defendants have violated the recordkeeping requirements of the NYLL with respect to Plaintiffs' compensation, hours, wages; and any deductions or credits taken against wages;

l.  Declaring that Defendants' violations of the New York Labor Law and Spread of Hours Wage Order were willful as to Plaintiffs;

m.  Awarding Plaintiffs damages for the amount of unpaid minimum and overtime wages, damages for any improper deductions or credits taken against wages, as well as awarding spread of hours pay under the NYLL as applicable;

n.  Awarding Plaintiffs liquidated damages in an amount equal to twenty-five percent (25%) of the total amount of minimum wage, spread of hours pay, and overtime compensation shown to be owed pursuant to NYLL § 663 as applicable;

o.  Awarding Plaintiffs prejudgment and postjudgment interest as applicable;

p.  Awarding Plaintiffs the expenses incurred in this action, including costs and attorney's fees pursuant to applicable provisions of the FLSA and the New York Labor Law; and

- 32 -

q.    All such other and further relief as the Court deems just and proper.

Dated: New York, New York
      June 7, 2012


MICHAEL FAILLACE & ASSOCIATES, P.C.


By:    _____
              Michael Faillace

       60 East 42nd Street, Suite 2020
       New York, New York 10165
       Telephone: (212) 317-1200
       Facsimile: (212) 317-1620
       *Attorneys for Plaintiffs*

- 33 -